UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

─────────────────────────────

TYRONE MONROE,

              Petitioner,

      -v-                        **No. 6:09-cv-06366(MAT)**
                                      **DECISION AND ORDER**

DAVID ROCK,

              Respondent.

─────────────────────────────

## I.    Introduction

Presently before the Court is the motion to vacate the judgment and to appoint counsel by pro se habeas petitioner Tyrone Monroe ("Monroe" or "Petitioner"). For the reasons discussed herein, the motion to vacate is granted, the petition is re-instated, and the request for a writ of habeas corpus is denied on the merits. The motion to appoint counsel is denied as moot.

## II.   The Motion to Vacate and to Appoint Counsel

On July 15, 2009, while represented by retained counsel ("Habeas Counsel"), Petitioner filed a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254. In a Decision and Order entered May 10, 2011, this Court found that Habeas Counsel filed the instant petition after the one-year limitations period under 28 U.S.C. § 2244(d)(1) had expired on October 4, 2008. The Court further found that Petitioner did not have sufficient statutory tolling under 28 U.S.C. § 2244(d)(2), and that he was not entitled to have the limitations period equitably tolled. Accordingly, the

Court dismissed the petition as untimely, and judgment was entered in Respondent's favor on May 11, 2011. Petitioner did not appeal to the Second Circuit, due to the fact that he apparently was not timely informed by Habeas Counsel of this Court's dismissal of the petition.

Petitioner, acting pro se, has filed a letter seeking to "get back [into Court] to be able to have [his] petition heard" and to be "appointed an attorney to help [him] get back in court[.]" (Dkt #10, p. 1 of 2). The Court has construed this letter as a motion to appoint counsel and a motion to vacate the judgment pursuant to Rule 60(b) of the Federal Rules of Civil Procedure ("Rule 60(b)"). Petitioner has submitted copies of correspondence (Dkt #11, pp. 4-5 of 18) from the Departmental Disciplinary Committee for the Supreme Court, Appellate Division, First Judicial Department ("the Disciplinary Committee") dated March 1, 2016, in response to his complaint against Habeas Counsel, who, at the time she represented Petitioner, had offices in New York City. Following its investigation, the Disciplinary Committee found that Habeas Counsel violated New York Rules of Professional Conduct ("NY RPC") 1.4(a)(iii) and 1.16(3) by (1) failing to promptly inform Petitioner that his habeas corpus petition had been dismissed as time-barred and, (2) even after he filed a complaint against her and requested a copy of the decision, failing to send him one. The Disciplinary Committee stated that Habeas Counsel had no records to

support her contention that she had promptly notified Petitioner by mail, and his grandmother by telephone call, that the petition had been dismissed in May of 2011. As a consequence of these failures, Habeas Counsel received an "admonition" from the Disciplinary Committee.

In addressing the arguments raised now by Petitioner, the Court is mindful that "the submissions of a pro se litigant must be construed liberally and interpreted 'to raise the strongest arguments that they suggest.'" The Court accordingly interprets Petitioner's motion as arguing that he is entitled to vacatur due to Habeas Counsel's professional failures, based on Rule 60(b)(6), which permits relief from judgment "where there are extraordinary circumstances, or where the judgment may work an extreme and undue hardship, and should be liberally construed when substantial justice will thus be served." United Airlines, Inc. v. Brien, 588 F.3d 158, 176 (2d Cir. 2009) (quotation omitted). The Court additionally construes Petitioner's motion as arguing that Habeas Counsel's professional failures constitute "extraordinary circumstances" warranting equitable tolling of the one-year statute of limitations applicable to Section 2254 petitions, so as to render the petition timely. See, e.g., Dillon v. Conway, 642 F.3d 358, 363 (2d Cir. 2011) ("Instances which justify equitable tolling include . . . an attorney's failure to file a habeas petition on behalf of a prisoner, despite explicit directions from the prisoner

to do so[.]") (internal and other citations omitted). In the interest of judicial economy, the Court has assumed without deciding that vacatur of the judgment is warranted, and that the statute of limitations should be equitably tolled, in order to reach the merits of the sole ground for relief raised in the petition—that Petitioner's assigned trial counsel provided ineffective assistance in connection with plea discussions. Because Respondent fully briefed the merits of Petitioner's habeas claim when he originally answered the petition and asserted the defense of untimeliness, the petition may be deemed submitted and ready for decision.

Because the Court is granting Petitioner's motion to vacate, and re-opening his Section 2254 proceeding, Petitioner does not require the assistance of counsel to "help [him] get back in court[.]" Therefore, Petitioner's motion to appoint counsel is denied.

For the reasons discussed below, the Court finds that Petitioner is not entitled to habeas relief. The request for a writ of habeas corpus is denied, and the petition is dismissed.

## III. Factual Background

### A. The Indictments

There are three indictments returned by Monroe County grand juries against Petitioner that have relevance to the factual background of the instant petition. First, Indictment #2003/663

charged Petitioner with Assault in the First Degree, Assault in the Second Degree, and two counts of Criminal Possession of a Weapon in the Second Degree, which allegedly were committed on July 22, 2003, and August 15, 2003, and involved the same victim, Derrick Thompson. Second, Indictment #2003/641 charged Petitioner with two counts of Robbery in the First Degree, which allegedly were committed on September 26, 2003, and September 27, 2003; these charges were unrelated to the charges involving Thompson. A third indictment, #2004/118, charged Petitioner with Criminal Possession of a Controlled Substance in the Third Degree ("CPCS-3rd"), and Criminal Possession of a Controlled Substance in the Fourth Degree ("CPCS-4th"); both counts were alleged to have been committed on October 1, 2003.

On December 22, 2003, arraignment on Indictment #2003/641 and Indictment #2003/663 was held before Hon. John R. Schwartz, Acting County Court Judge, Monroe County Court of New York State (Transcript of 12/22/03 Hearing, Dkt #1-2, pp. 2-5 of 84). Petitioner appeared with his assigned counsel, Mark D. Funk, Esq. ("Defense Counsel") and entered pleas of "not guilty" to all counts of both indictments.

On March 1, 2004, Petitioner appeared with Defense Counsel before Judge Schwartz (Transcript of 3/1/04 Hearing, Dkt #1-2, pp. 7-12 of 84) and entered pleas of "not guilty" to the charges in Indictment #2004/118. Also on that date, Defense Counsel placed on

the record the status of the off-the-record plea discussions between himself, Assistant District Attorney Finocchio ("the Prosecutor"), and Judge Schwartz with regard to the charges in Indictment #2003/663. Defense Counsel noted that at the last court appearance, Judge Schwartz said that if Petitioner were to plead guilty with regard to Indictment #2003/663, the judge would make a sentence promise of 20 years to life.[1] Defense Counsel stated that he had discussed the plea offer with Petitioner, as well as the fact that with the filing of Indictment #2004/118, Petitioner now had five separate felony charges pending against him which carried potential indeterminate sentences with life in prison as the maximum term, and for which consecutive sentences could be imposed. Defense Counsel indicated that Petitioner did not wish to accept that plea offer.

At some point, Indictment #2003/663 was re-assigned to Monroe County Court Judge Patricia D. Marks, for trial. After a jury trial, Petitioner was convicted of Assault in the First Degree and two counts of CPW-2nd as charged in Indictment #2003/663.[2]

On May 14, 2004, the parties appeared before Judge Schwartz (Transcript of 5/14/04 Hearing, Dkt #1-2, pp. 14-24 of 84), and the

---

[1]

At this point, all of the parties assumed, incorrectly, that Petitioner was a persistent violent felony offender under P.L. § 70.08.

[2]

This conviction was affirmed on direct appeal, People v. Monroe, 39 A.D.3d 1279 (4th Dep't), lv. denied, 9 N.Y.3d 867 (2007), and is not at issue in the present habeas proceeding.

Prosecutor stated that Petitioner would be entering a guilty plea to count two of Indictment #2003/641, i.e., Petitioner "would be pleading to robbery first under count two to satisfy robbery first degree under count one" of Indictment #2003/641. In addition, the Prosecutor noted, the plea would be in full satisfaction of Indictment #2004/118 charging CPCS-3rd  and CPCS-4th. As to the sentence, Judge Schwartz had agreed to impose a determinate sentence in the range of 10 to 20 years, which automatically would include a 5-year term of post-release supervision. In addition, Judge Schwartz had agreed that any sentence he imposed would run concurrently to, and not be greater than, the sentence Petitioner received from Judge Marks for his convictions under Indictment #2003/663. Defense Counsel then stated that up until the prior evening, he and the Prosecutor believed that if Petitioner were convicted on the first-degree assault charges under Indictment #2003/663, he would be considered a mandatory persistent violent felony offender under P.L. § 70.10. However, after doing some research, Defense Counsel concluded that Petitioner "did not fit into that sentencing category," although he was eligible to be found by Judge Marks to be a discretionary persistent felony offender under P.L. § 70.10; in that case, he could receive an indeterminate sentence with a minimum ranging from 15 to 25 years, and a maximum term of life in prison. If, however, Judge Marks did not adjudicate him to be a discretionary persistent felony

offender, he would be considered a second violent felony offender; in that case, he faced a determinate sentence in the range of 10 to 40 years, plus a mandatory 5-year period of post-release supervision. Under further questioning by Judge Schwartz, Petitioner indicated his understanding of the sentencing possibilities, and then proceeded to plead guilty to one count of first-degree robbery (P.L. § 160.15(4)) as alleged in count two of Indictment #2003/641.

On May 20, 2004, prior to Petitioner's sentencing on Indictment #2003/663, the Prosecutor filed an application for a persistent felony offender ("PFO") hearing pursuant to P.L. § 70.10 and New York Criminal Procedure Law ("C.P.L.") § 400.20 (PFO Application, Dkt #1-2, pp. 26-29 of 84). On May 21, 2004, the parties appeared before Judge Marks for sentencing on Indictment #2003/663 (Transcript of 5/21/04 Sentencing, Dkt #1-2, pp. 43-53 of 84). Judge Marks acknowledged receipt of the PFO Application, and stated that "[i]n light of the fact that this involves two separate incidents and a potential sentence of up to a maximum of forty years, the need for [p]ersistent [f]elony treatment is not necessary[,] though [Petitioner] otherwise qualifies."[3] (Dkt #1-2,

---

[3]

    When the state court has found, pursuant to C.P.L. § 400.21, that a person is a persistent felony offender, and when the court is of the opinion that the defendant's history and character, and the nature and circumstances of his criminal conduct, indicate that extended incarceration and life-time supervision will best serve the public interest, the court, in lieu of imposing the sentence of imprisonment authorized by P.L. §§ 70.00, 70.02, 70.04, 70.06 or 70.80(5) for the crime of which such person presently stands convicted, may impose the sentence of imprisonment authorized by that section for a class A-I felony. N.Y. PENAL LAW § 70.10(2).

p. 45 of 84). The Prosecutor then submitted a second violent felony offender[4] information to Judge Marks, alleging, as the necessary predicate violent felony conviction, Petitioner's March 28, 1996 convictions on charges of Assault in the Second Degree and Robbery in the Second Degree. The Prosecutor requested consecutive, determinate sentence of 15 years and 25 years on the first-degree assault convictions involving the July 22nd and August 15th incidents, respectively, with a concurrent 15-year term on the CPW-2nd conviction, for an aggregate sentence of 40 years' imprisonment, plus 5 years of post-release supervision. Defense Counsel requested the minimum sentences of 7 and 15 years on the first-degree assault convictions involving the July 22nd and August 15th incidents, respectively. Judge Marks sentenced Petitioner to concurrent, 7-year sentences on the first-degree assault and CPW-2nd convictions involving the July 22nd incident; and concurrent sentences of 25 years on the first-degree assault conviction involving the August 15th incident, and 15 years on the CPW-2nd conviction involving the August 15th incident, plus 5 years of post-release supervision on all of the sentences. Judge Marks directed that the sentences pertaining to the August 15th incident were to be served consecutively to those pertaining to the July 22nd

---

[4]

A second violent felony offender is a person who stands convicted of a violent felony offense as defined in P.L. § 70.02(1) after having previously been subjected to a predicate violent felony conviction as defined in P.L. § 70.04(1)(b). See N.Y. PENAL LAW § 70.04(1)(a).

incident, for an aggregate sentence of 22 years plus 5 years of post-release supervision. (Dkt #1-2, pp. 52 of 84).

On June 21, 2004, the parties appeared before Judge Schwartz for sentencing on Indictment #2003/641 (Transcript of 6/21/04 Sentencing, Dkt #1-2, pp. 31-41 of 84). Petitioner was sentenced to the previously agreed-upon 15-year determinate sentence plus 5 years of post-release supervision, to run concurrently to the sentence imposed by Judge Marks.

**B.    The C.P.L. § 440.10 Motion to Vacate**

Petitioner filed a pro se motion to vacate the judgment pursuant to C.P.L. § 440.10 in Monroe County Court, asserting that he was denied the effective assistance of counsel because Defense Counsel, during pre-plea discussions on Indictment #2003/663, erroneously informed him that he was a "mandatory persistent violent felony offender" and, as a consequence, was eligible to receive a potential term of life in prison. Petitioner contends that as a result of this erroneous belief, Defense Counsel failed to counsel him properly as to his options, and also failed to correct the Prosecutor, who shared the same mistaken belief about Petitioner's recidivist status. Although Defense Counsel subsequently realized his error, it was not until after Petitioner proceeded to trial on Indictment #2003/663 and was convicted. The Monroe County District Attorney's Office, in support of their opposition to the motion, submitted an Answering Affirmation signed by the Prosecutor.

The C.P.L. § 440.10 motion was heard by Judge Marks ("the 440 Court"). In a written decision and order dated February 8, 2008 (C.P.L. § 440.10 Order, Dkt #1-2, pp. 60-66 of 84), the 440 Court denied the motion without a hearing. As an initial matter, the 440 Court agreed that Defense Counsel's "misapprehension [about Petitioner's recidivist status], as a matter of law, falls below the requirements of reasonably effective assistance of counsel and, therefore, the first prong of the Strickland standard is satisfied[.]" (Dkt #1-2, p. 64 of 84 (citations omitted)). However, the 440 Court determined, that Petitioner could not demonstrate prejudice attributable to Defense Counsel's deficient performance. (Id.). The Appellate Division, Fourth Department, of New York State Supreme Court denied Petitioner's request for leave to appeal.

In February 2009, Petitioner retained Habeas Counsel to prepare his petition, which asserts the ineffective assistance claim raised in the C.P.L. § 440.10 Motion. There is no dispute that this claim is fully exhausted, having been fairly presented to the state courts in federal constitutional terms during one complete round of New York's established review process. See, e.g., Smith v. Duncan, 411 F.3d 340, 345 (2d Cir. 2005).

## IV. Discussion

Because Monroe's petition post-dates the enactment of the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), which amended 28 U.S.C. § 2254, he can obtain a writ of habeas corpus only if he can demonstrate that the state court's

adjudication on the merits of his ineffective assistance claim "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d); see also, e.g., Harrington v. Richter, 562 U.S. 86, 98 (2011) ("By its terms § 2254(d) bars relitigation of any claim 'adjudicated on the merits' in state court, subject only to the exceptions in §§ 2254(d)(1) and (2).").

The United States Supreme Court has determined that Strickland v. Washington, supra, qualified as "clearly established law" for purposes of reviewing ineffective assistance claims under AEDPA. Rosario v. Ercole, 601 F.3d 118, 123 (2d Cir. 2010) (citing Williams v. Taylor, 529 U.S. 362, 390-91 (2000)). The Strickland test comprises two necessary components: a deficient performance, and resulting prejudice. Strickland, 466 U.S. at 687. Here, the 440 Court explicitly applied the Strickland standard. Therefore, this Court must determine if the 440 Court unreasonably applied Strickland to Petitioner's case. See Harrington, 562 U.S. at 101 ("The pivotal question is whether the state court's application of the Strickland standard was unreasonable. This is different from asking whether defense counsel's performance fell below Strickland's standard."). In Harrington, the Supreme Court

-12-

emphasized the extremely high bar set by Strickland in conjunction with § 2254(d):

> The standards created by Strickland and § 2254(d) are both "highly deferential," and when the two apply in tandem, review is "doubly" so[.] The Strickland standard is a general one, so the range of reasonable applications is substantial. Federal habeas courts must guard against the danger of equating unreasonableness under Strickland with unreasonableness under § 2254(d). When § 2254(d) applies, the question is not whether counsel's actions were reasonable. The question is whether there is *any reasonable argument* that counsel satisfied Strickland's deferential standard.

Harrington, 562 U.S. at 105 (internal quotations and citations omitted; emphasis supplied).

The 440 Court found that Petitioner had shown that Defense Counsel's performance was deficient under Strickland, but that Petitioner had not established he was prejudiced thereby. This Court's analysis therefore will focus solely on whether the 440 Court unreasonably applied Strickland's prejudice prong to Petitioner's case.

A defendant shows prejudice under Strickland by proving that "'there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." Williams, 529 U.S. at 390-91 (quoting Strickland, 466 U.S. at 694). Here, the 440 Court stated that to establish prejudice in the context of the ineffective assistance claim asserted by Petitioner, he needed to show that the prosecution (1) "would have offered a more favorable plea deal if

they had known the correct sentencing status," and (2) that Petitioner would have accepted such offer and pled guilty. (Dkt #1-2, p. 64 of 84).

The Court will consider the second element first—whether he would have accepted a more advantageous bargain had one been argued, demonstrating a "reasonable probability" that "but for counsel's unprofessional errors, the result of the proceeding would have been different." Mask v. McGinnis, 233 F.3d 132, 140 (2d Cir. 2000) (quotation omitted). In Mask, which the 440 Court cited, the defendant's attorney erroneously advised him that he was a persistent violent felony offender and that the prosecution's offer of 10 years to life was the best offer the State could make. Mask rejected the offer and, after being convicted, was sentenced to 20 to 40 years in prison. After his conviction, it was revealed that Mask was not in fact a persistent violent felon and that therefore he would have been eligible for a lower plea offer. In support of his habeas petition, the defendant submitted an equivocal affidavit stating he would have "been willing to consider pleading guilty if the prosecution had offered a guilty plea of less than 10 years to life. I rejected the 10 to life plea offer because it was unreasonable. . . . A plea offer that I would have considered to be reasonable would have been 8 to 16 years." Mask, 233 F.3d at 141. In Mask, the state court found that the "'[d]efendant has not shown that but for the error, which was shared by all parties including the [c]ourt, he would have been offered and would have accepted a

more advantageous bargain,' and that Mask's contentions thus amount to 'speculation.'" Id. at 140 (quotation to record omitted). The Second Circuit found that "the state court's insistence on certainty (an even higher standard than preponderance of the evidence) represents an 'unreasonable application of[ ] clearly established Federal law,' 28 U.S.C. § 2254(d)(1), in light of the requirement that a petitioner need only show that but for counsel's errors there was a 'reasonable probability' that the result of the plea bargaining process would have been different." Id. (brackets in original).

Here, Monroe is significantly more vague than the petitioner in Mask. In his unsworn memorandum of law in support of his C.P.L. § 440.10 motion, he states merely that "it was reasonably probable that [he] would have a accepted a plea bargain and not proceeded to trial[,]" (C.P.L. § 440.10 Brief, Dkt #1, p. 37 of 59), but he does not indicate what sentence would resulted in a "reasonable probability" of acceptance on his part. In his reply to the Prosecutor's affidavit, Petitioner states that if his correct status had been known, "any plea offers would have had to be less than ending with life" (Dkt #1-2, p. 56 of 84), but does not give any indication of what length of determinate sentence he deemed to be reasonable. This distinguishes the present case from Mask, in which the petitioner stated that he rejected the offered plea because it was unreasonable, and affirmatively stated that he viewed a plea of 8 to 16 years as reasonable; according to the

-15-

Second Circuit, this "render[ed] it highly probable that he would have accepted" a plea offer of 8 to 16 years. Mask, 233 F.3d at 141.

This brings the Court to another point of distinction between the present case and Mask. There, the Second Circuit "disagree[d] that the state court made any factual determination concerning th[e] issue [of whether the prosecutor would have made a better offer had she believed that she was permitted to do so] that the district court was obligated to defer to." Mask, 233 F.3d at 142 (noting that "[t]he state court simply stated that it had 'serious doubts' as to whether the prosecutor would have made a better offer"). Here, after noting that "it appears [Monroe] might have accepted a plea offer with a determinate sentence," the 440 Court stated that "this is unclear from [his] papers and *it is apparent no such offer would have been made by the [Prosecutor]*." (Dkt #1-2, p. 65 of 84) (emphasis supplied). This constitutes a factual finding to which this Court must defer under AEDPA:

> In a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed to be correct. The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence.

28 U.S.C. § 2254(e)(1). As discussed further below, Petitioner has not borne the burden of rebutting the presumption of correctness by clear and convincing evidence.

The 440 Court found that Petitioner did not present any evidence that the Prosecutor would have offered a more favorable plea deal had the Prosecutor been aware that Petitioner was not eligible for "persistent violent felony offender status;" rather, the 440 Court explained, Petitioner simply relied on his own assertion that the Prosecutor would have offered a determinate sentence. The 440 Court rejected this as unconvincing based upon the affidavit from the Prosecutor, in which she stated in part as follows:

> While defendant would ask th[e] [440] [c]ourt to believe that had [she] known his sentencing status was that of predicate [sic] violent felony offender during plea negotiations [she] would have offered a plea to a reduced Class C felony conditioned on the minimum sentences, his claim is simply unsupported by the record. Defendant had a criminal history dating back to the age of 17 . . . . From the time [she] reviewed the charged offenses and evaluated his criminal history [she] never wavered from my position that [he] should receive an extended period of incarceration with lifetime supervision. Given defendant's record and his numerous pending felony charges, at no time would [she] have made an offer to defendant which would have involved less than a life sentence, whether as a persistent violent felony offender or a persistent felony offender.

Answering Affirmation of Julie Finocchio, Esq. ("Prosecutor Aff."), ¶ 29; see also id. ¶ 28 (Dkt #1, pp. 50-59 of 59). The 440 Court accepted the Prosecutor's representation that "had she known that the defendant was not eligible to be sentenced as a persistent violent felony offender, her plea offer would have still included a life sentence for the defendant as a persistent felony offender

based upon the defendant's extensive record." (Dkt #1-2, p. 64 of 84).

Habeas Counsel argues that the assumptions by the Prosecutor and the 440 Court are factually and legally incorrect because the Prosecutor could not have offered a sentence containing a life term based on Petitioner's recidivist status at that point in time. This analysis must be broken down into two parts. As to the impossibility of having Petitioner sentenced as a persistent violent felony offender under P.L. § 70.08, Petitioner is correct. During the plea discussions at issue, Petitioner stood convicted of the following felonies: second-degree assault, a violent felony, on March 28, 1996; second-degree robbery, also a violent felony, and also on March 28, 1996; and fifth-degree criminal sale of a controlled substance, a non-violent felony, on April 2, 1992. Contrary to all the parties' assumptions at that time, Petitioner was not eligible for treatment as a persistent violent felony offender under P.L. § 70.08 (sometimes referred to as New York's "mandatory" recidivist statute). To be a persistent violent felony offender, a defendant must stand convicted of a violent felony offense "after having previously been subjected to *two* or more predicate *violent* felony convictions as defined in [P.L. § 70.04(1)(b)]." N.Y. PENAL LAW § 70.08(1)(a) (emphases supplied). Here, although Petitioner, numerically speaking, had two predicate violent felony convictions (second-degree assault and second-degree robbery), as Habeas Counsel argued, they did not count as two

predicate violent felonies because "judgment convicting [P]etitioner of the two prior violent felony offenses was entered the same day," and "the law treats them as a single offense." (Dkt #1, p. 21 of 59). Although Habeas Counsel's statement is not supported by any case citations, she is correct that the New York Court of Appeals has held that P.L. § 70.08(1)(b) must be interpreted as containing a "sequentiality" requirement—that is, the second predicate violent felony offense must have been committed *after* sentence was imposed on the first. People v. Morse, 62 N.Y.2d 205, 219, 223-24 (1984); see also, e.g., People v. Corselli, 512 N.Y.S.2d 478, 479 (2d Dep't 1987) (relying on Morse, supra, to find that "the sentencing court erred in adjudicating the appellant to be a persistent violent felony offender. The defendant's prior violent felony convictions were rendered on October 3, 1977. On those prior felony convictions, the defendant received concurrent sentences. Thus, the defendant's prior convictions do not constitute two or more predicate convictions since the proposed second predicate offense was not committed after sentence was imposed upon the first predicate offense[.]"). (internal and other citation omitted). Therefore, the Court agrees with Habeas Counsel that Petitioner was not a persistent violent felony offender under P.L. § 70.08, and the Prosecutor could not have offered a plea deal containing a request to have him sentenced as such.

However, at the time of the plea discussions, Petitioner did satisfy the eligibility requirements for the persistent felony offender statute, P.L. § 70.10 (New York's so-called "discretionary" recidivist statute). See N.Y. PENAL LAW § 70.10(1)(a), (b)(i), (b)(ii), (b)(iv). That is, he had been "convicted of two . . . felonies" for which "a sentence to a term of imprisonment in excess of one year . . . [had been] imposed," N.Y. PENAL LAW § 70.10(1)(a), (b)(i). While the March 28, 1996 convictions still would only qualify as one predicate felony conviction, see id. § 70.10(b)(iv), Petitioner also had the April 2, 1992 conviction for CSCS-5th, a non-violent felony, for which he received a sentence "in excess of one year," namely, an indeterminate term of 1 to 3 years in prison. (Dkt #1-2, p. 27 of 84). While P.L. § 70.08 allows imposition of a life-term based solely on the court's finding of the requisite number of qualifying predicate felonies, P.L. § 70.10 requires an additional step not required by P.L. § 70.08—hence, why it is referred to as the "discretionary" persistent felon statute. Thus, the 440 Court's and the Prosecutor's statements to the effect that any plea offer would have still included a life sentence for Petitioner as a persistent felony offender based upon his extensive criminal record is somewhat unclear, as it fails to clarify that an additional step would have needed to occur: The Prosecutor would have had to request the sentencing court to find "that the history and character of [Petitioner] and the nature and circumstances of his

criminal conduct indicate that extended incarceration and life-time supervision will best serve the public interest[,]" N.Y. PENAL LAW § 70.10(2). Thus, while any plea offered by the Prosecutor could not have outright included a life term, the Prosecutor could have, following the plea, moved to have Petitioner sentenced as a persistent felony offender. Assuming that the sentencing court agreed with the Prosecutor that extended incarceration and lifetime supervision of Petitioner, given his extremely length criminal history, would best serve the public interest, see N.Y. PENAL LAW § 70.10(2). he still would have faced a life sentence, see id.

Habeas Counsel concedes as much but takes issue with the 440 Court's analysis, asserting there is no reason to expect Petitioner would have accepted a plea "for a life sentence on the back end when the power to sentence him [to life] was only discretionary," (Dkt #1, p. 22 of 59). That may be the case, but the Court here is concerned with the question of whether the Prosecutor would have offered a plea involving determinate sentence *and* foregone the opportunity, after the plea, to seek persistent felony offender treatment and a concomitant sentence involving lifetime supervision. Based on the record before the Court, there is no reasonable probability of that occurring.

Habeas Counsel also asserts that there was "little likelihood" (Petition, Dkt # 1, p. 22 of 59) that, if the Prosecutor requested persistent felony offender status, the sentencing judge would have granted it. Habeas Counsel notes that when the Prosecutor

subsequently did request it, Judge Marks declined to grant it. However, as noted above, that denial was rather equivocal insofar as Judge Marks stated that "[i]n light of the fact that this involves two separate incidents and a potential sentence of up to a maximum of forty years, the need for [p]ersistent [f]elony treatment is not necessary[,] *though [Petitioner] otherwise qualifies*." (Dkt #1-2, p. 45 of 84) (emphasis supplied). This statement, in this Court's opinion, does not signal a "little likelihood" (Dkt # 1, p. 22 of 59) of Judge Marks declining to grant persistent felony offender status, if the case were in a different procedural posture. Moreover, if Petitioner had pled guilty, the plea most likely would have been taken by Judge Schwartz, because the case was only transferred to Judge Marks because Judge Schwartz was unavailable to try it. In any event, Habeas Counsel's argument obscures the focal point of the Court's § 2254(d) analysis, which is whether the 440 Court was objectively unreasonable in concluding that there was no reasonable probability that the Prosecutor would have offered him a determinate sentence without the potential for lifetime supervision. To answer this question, the Court first must "determine what arguments or theories supported or, as here, could have supported, the state court's decision[.]" Harrington v. Richter, 562 U.S. at 102. This Court has discussed at length the 440 Court's and the Prosecutor's explanations above. While several points required some additional explication by this Court, it is well-established that AEDPA does

not even require that there be an opinion from the state court explaining its reasoning. Harrington, 562 U.S. at 98 (collecting cases).

Harrington instructs that the habeas court next "must ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision of th[e] [Supreme] Court." Id. at 102. Harrington represents the Supreme Court's most recent, "and arguably more stringent, interpretation of the statutory language[,]" Parson v. People of the State of N.Y., No. 13CV5745 (WHP)(MHD), 2014 WL 11201527, at *5 (S.D.N.Y. Dec. 30, 2014), rep. and rec. adopted, No. 13CV5745(WHP) (MHD), 2016 WL 1248962 (S.D.N.Y. Mar. 24, 2016). Here, the Court is compelled to answer this question affirmatively. Stated another way, based on the present record, the Court cannot conclude that the 440 Court's decision was "so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." Harrington, 562 U.S. at 103. Therefore, habeas relief cannot issue.

## V. Conclusion

For the foregoing reasons, Tyrone Monroe's motion to vacate (Dkt #11) is granted to the extent that the petition (Dkt #1) is re-instated. Monroe's request for a writ of habeas corpus is denied on the merits, and the petition (Dkt #1) is dismissed. The motion to appoint counsel (Dkt #11) is denied as moot. Because Monroe has

failed to make a substantial showing of the denial of a constitutional right, <u>see</u> 28 U.S.C. § 2253(c)(2), the Court declines to issue a certificate of appealability.

**SO ORDERED.**

S/Michael A. Telesca

_____
    HON. MICHAEL A. TELESCA
    United States District Judge

Dated:    March 29, 2017
          Rochester, New York